IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DONALD BUTLER, § | |
|            Plaintiff, § | |
| § | |
| v. § | CIVIL CAUSE NO. 3:16-CV-184-D-BK |
| § | |
| STEVE DYE, et al., § | |
|            Defendants. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* civil rights case was automatically referred to the United States Magistrate Judge for judicial screening. The Court granted Plaintiff's motion to proceed *in forma pauperis*, but did not issue process pending preliminary screening. For the reasons that follow, this case should be summarily dismissed.[1]

**I. BACKGROUND**

On January 19, 2016, Plaintiff filed a *pro se* complaint against Defendants Steve Dye, Chief of Police of the Grand Prairie Police Department ("GPPD"), and GPPD Officer Miles for violating his constitutional rights in connection with an alleged racial profiling incident on February 20, 2015. Doc. 1 at 1, 2-3. He subsequently answered the Court's questionnaire and submitted an *Amended Complaint*. Doc. 10; Doc. 18. Plaintiff avers that he brings

> this action to challenge Defendants' policies, practices, and/or actions that culminated into lack of due process, equal protection under the law, racial profiling, racial discrimination, and harassment violations by the Defendants' Grand Prairie Police Department grossly violated and without disregard continue to violate constitutional rights under the Fourth and Fourteenth Amendments.

---

[1] The complaint was initially filed in the Fort Worth Division and then transferred to this Court due to improper venue. Doc. 5.

Doc. 18 at 2. He requests monetary and injunctive relief.[2] Doc. 18 at 8.

According to the *Amended Complaint*, around 11:45 pm, on February 20, 2015, Plaintiff was driving to the store in his 1996 Cadillac Deville with bright chrome wheels when a police car sped up behind him, lowered the front head lights, and began following him. Plaintiff feared the police cruiser would hit him and push him off the road as it was traveling very close to his rear bumper. Doc. 18 at 3-4. The police cruiser ultimately turned on its emergency lights, but Plaintiff continued driving until he found a "safe place to park visible with people" due to the "dramatic incident[s] that had just happened" in Ferguson, Missouri, and New York City. Doc. 18 at 5-6. As Plaintiff finished parking, Officer Miles jumped out of the police cruiser and inquired why Plaintiff did not stop sooner. *Id.* Plaintiff replied, "because I am not doing anything wrong, you see a Cadillac with chrome rims automatically [sic] start following. Why?" Doc. 18 at 5 Officer Miles allegedly retorted, "we going to play the race card," and Plaintiff responded, "Yeah we gon [sic] use the race card. Why else you following me for what reason? Like you trying to run me off the road. Can't be nothing else to me but a racist cop." Doc. 18 at 5. The verbal exchange continued until Officer Miles requested Plaintiff's driver's license and insurance documents, and returned to his police car. Doc. 18 at 6; Doc. 10 at 4.

In the interim, a black GPPD police officer arrived on the scene and began questioning Plaintiff about why he was upset and why he did not stop. Doc. 18 at 6; Doc. 10 at 4. Plaintiff responded:

> So I do not end up like the kid in Ferguson and the black dude who got choked to death in New York. So I pulled into a public place to make sure I am safe with witnesses. And I am wondering why he instead starts following me and turning his

---

[2] Plaintiff does not specify any action or activity he seeks to enjoin, requesting only that the Court "[i]ssue an injunction under each Cause of Action, granting any as may be appropriate." Doc. 18 at 8.

car lights off and on behind me when it looked like he was about to give chase to another driver to my left driving at a high rate of speed then as if he was going to intentionally ram me into the side of the street is suspicious to me.

Doc. 18 at 6.

The second GPPD officer continued interrogating Plaintiff, relating the information to Officer Miles, and returning with additional questions for Plaintiff.  Doc. 18 at 6.  Plaintiff repeatedly asked why he had been pulled over, but never received a reply.  Doc. 18 at 6.  Ultimately, the traffic stop, which lasted about 20 to 30 minutes, went "beyond the scope of a routine traffic stop."  Doc. 18 at 7; Doc. 10 at 4.

Plaintiff was issued citations for failing to obtain a Texas Drivers' license and failing to obtain Texas license plates, despite his claim that he had never resided in Texas and was only visiting a sister who had suffered a major stroke.  Doc. 18 at 7; Doc. 10 at 4.  Plaintiff maintains that "he was singled out because of his license plates . . . the type of vehicle he drove, his style of dress, [and] his light skin Mexican/African American like complexion."  Doc. 18 at 7.  And shortly after the incident, he filed a "citizen complaint" with the GPPD, which, following a brief investigation, found no violation.  Doc. 18 at 8.

On May 14, 2015, after waiving his right to a jury trial, Plaintiff pled no contest to the charge of failing to obtain a Texas Driver License; and on June 15, 2015, Plaintiff paid the $155 fine online for that offense and the charge of failing to obtain Texas License Plates was dismissed.  Doc. 10 at 2; Doc. 12-1 at 2; *State of Texas v. Butler*, No. K0447696 (Municipal Court of Grand Prairie, 2015).

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B).  That statute provides for the *sua sponte* dismissal of a

complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted).

The Court liberally construes Plaintiff's filings with all possible deference due a *pro se* litigant. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice"). Even under this most liberal construction, however, Plaintiff's claims are frivolous and/or fail to state a claim upon which relief can be granted.

### A. Challenge of Traffic Citation Barred by *Heck v. Humphrey*

To the extent Plaintiff challenges the validity of his conviction for failing to obtain a Texas Driver's License, Doc. 18 at 7, his claim is barred by the doctrine of *Heck v. Humphrey,* 512 U.S. 477, 486 (1994). In *Heck*, the United States Supreme Court unequivocally held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [footnote omitted] a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-487. The *Heck* rule also applies to claims for declaratory and injunctive relief if a favorable judgment would "necessarily imply" the invalidity of the prisoner's "conviction" in the proceeding. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

In this case, the waiver of jury trial, entry of no contest plea, and payment of the $155 fine – in lieu of contesting the traffic ticket – had the effect of a conviction. Doc. 12-1 at 2; Doc. 10 at 2. Thus, a ruling in Plaintiff's favor on any claim related to the traffic ticket "would necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487; *see Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) (*Alford*, or no contest plea, does not bar application of *Heck* doctrine). Since no court has reversed or invalidated Plaintiff's traffic ticket,[3] any claim challenging the validity of the ticket is clearly barred by *Heck*. *See, e.g., Pender v. City of Farmerville*, 2011 WL 311016, at *4 n. 5 (W.D. La. Jan. 7, 2011) (*Heck* barred plaintiff's challenge to the validity of an arrest that followed traffic ticket), *report and recommendation adopted*, 2011 WL 311013 (W.D. La. Jan. 28, 2011); *Fritz v. City of Corrigan*, 163 F.Supp.2d 639, 641 (E.D. Tex. 2001) (because the plaintiff pled *nolo contendere* to the charges surrounding his speeding citation, he was barred from bringing any claims connected to it under *Heck*).

Consequently, any claim related to the validity of Plaintiff's conviction for failing to obtain a Texas Driver's License lacks any basis in law and should be dismissed with prejudice as frivolous until such time as Plaintiff satisfies the conditions set forth in *Heck v. Humphrey*. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (relying on *Johnson v.*

---

[3] Unless an authorized tribunal or executive body has overturned or otherwise invalidated Plaintiff's convictions, his claims are "not cognizable under [section] 1983." *Heck*, 512 U.S. at 487.

*McElveen*, 101 F.3d 423, 424 (5th Cir.1996) to similarly modify dismissal language); *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) (*Heck*-barred claim is legally frivolous).

### B. Fourth Amendment Challenge to Traffic Stop Is Also *Heck*-Barred

Likewise, Plaintiff's challenge of the traffic stop implicates the validity of the ensuing criminal charges against him, and is thus barred by the *Heck* doctrine. Plaintiff asserts that his rights under the Fourth Amendment were violated because the stop/detention went "beyond the scope of a routine traffic stop." Doc. 18 at 7. He contends that "Defendants failed to establish a reasonable, articulable suspicion that criminal activity was afoot" and that "there was no brief investigatory stop conducted but a long drawn out unreasonable stop," for which no justification was given. Doc. 18 at 7. In answer to the Court's questionnaire, Plaintiff essentially reiterates these assertions and further argues that "[a] stop lacking reasonable suspicion (or probable cause) is generally regarded as 'unreasonable' and is an invitation to suppression of any evidence found and is possibly grounds for a civil suit for wrongful detention." Doc. 10 at 4. Plaintiff concedes, however, that the traffic ticket was disposed of by his payment of the $155 fine. Doc. 10 at 2; see also Doc. 12-1 at 2 (copy of Plaintiff's plea of no contest and agreement to pay $155 fine in exchange for a probated sentence).

While Plaintiff correctly recounts the status of the law, he incorrectly concludes that he can bring a federal civil rights claim for wrongful detention based on the alleged illegality of the traffic stop, for a favorable decision on that claim would "necessarily imply" the invalidity of his subsequent conviction for failure to obtain a Texas Driver's License. *Wilkinson*, 544 U.S. at 81-82. In an unpublished, *per curiam* opinion, the Court of Appeals for the Fifth Circuit cited the *Heck* bar in upholding the district court's grant of summary judgment on a plaintiff's unlawful arrest claim, where the plaintiff was convicted of the charge of running a stop sign that

resulted from the initial traffic stop. *Johnson v. City of Pittsburg, Texas*, 192 F.3d 127, 1999 WL 684150 (5th Cir. Aug. 12, 1999) (*per curiam*) (concluding traffic stop was lawful where conviction of resulting traffic offense was final).  Other district courts within the Fifth Circuit, when faced with facts analogous to those present here, have reached similar conclusions.  *See, e.g.,* *Lemon v. Kenner Police Dep't*, CV 16-6631, 2016 WL 3950771, at *3 (E.D. La. July 1, 2016), report and recommendation adopted, CV 16-6631, 2016 WL 3902596 (E.D. La. July 19, 2016)) (plaintiff's various claims for damages in section 1983 action arising from an allegedly illegal traffic stop were barred by *Heck* where they were "clearly connected to the validity of his present confinement" on "charges arising from the challenged traffic stop);  *Winters v. City of Gulfport*, 1:14-CV-222-HSO-RHW, 2014 WL 6476264, at *3 (S.D. Miss. Nov. 19, 2014) (allegations of illegal stop based on racial profiling were barred by *Heck* where defendant pled guilty to charges emanating from stop and arrest); *Idel v. New Orleans Police Dept.*, CIV.A. 11-1078-DEK, 2012 WL 860380, at *2 (E.D. La. Mar. 13, 2012) (plaintiff's first claim that he was falsely arrested due to lack of probable cause was *Heck*-barred where he subsequently pled guilty to charges that he possessed heroin and tried to kick a police officer during the arrest); *Birgans v. Louisiana*, CIV.A.09-0926, 2010 WL 2428026, at *2-*3 (W.D. La. Apr. 26, 2010), report and recommendation adopted, CIV.A. 09-0926, 2010 WL 2485958 (W.D. La. June 10, 2010) (plaintiff's claims that he was falsely arrested, falsely imprisoned, and maliciously prosecuted following a traffic stop during which a consensual search of the vehicle revealed marijuana were barred by *Heck* where plaintiff had subsequently been convicted of the resulting marijuana trafficking charge); *cf. Handshaw v. Brandle*, No. 1:15CV103, 2016 WL 4386045 (S.D. Miss. Aug. 17, 2016) (plaintiff's illegal detention claim was not barred by *Heck* where state court had

previously found no probable cause for the traffic stop). Although the foregoing decisions are not binding on this Court, they are nonetheless instructive.

That notwithstanding, the Court's conclusion in this case that Plaintiff's claims are barred by *Heck* is supported by circuit precedent. In *Hudson v. Hughes*, 98 F.3d 868 (5th Cir.1996), the plaintiff contended that he was falsely arrested because the arresting officer lacked probable cause to arrest and search him. During the search incident to his arrest on a burglary charge, plaintiff was found to be in possession of a firearm. The Court of Appeals for the Fifth Circuit held that a plaintiff's false arrest claim was barred by *Heck* because,

> [i]f proved . . . Hudson's false arrest claim necessarily would call into question his conviction as a felon in possession of a firearm. Specifically, if the arresting officers lacked probable cause to arrest Hudson for burglary and the arrest is invalid, the firearm discovered in Hudson's possession as a result of the arrest would be subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest.

*Id*. at 872 (citing *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir.1995)). The same is true of Plaintiff's claims in the case *sub judice*: if the Court determined that the traffic stop of Plaintiff was illegal, his conviction for driving without a valid license would be called into question since, but for the traffic stop, the evidence of that offense would not have been discovered.

### C. Racial Profiling

Plaintiff generally asserts that he was the victim of racial profiling when Officer Miles stopped his vehicle on February 20, 2015. Such an allegation is best viewed as an equal protection claim under the Fourteenth Amendment. *See Wayte v. United States*, 470 U.S. 598, 608 (1985) ("Selectivity in the enforcement of criminal laws is subject to constitutional restraints," and the rubric for analyzing a racial profiling claim thus draws on "ordinary equal protection standards."); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that claims asserting that selective enforcement of a law based on race are properly brought under the

Page **8** of **14**

Equal Protection Clause and that the clause may be violated even if police action is acceptable under the Fourth Amendment).  To state a claim of racial profiling under the Equal Protection Clause and section 1983, a plaintiff must allege that he was treated differently than similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *Pinedo v. City of Dallas*, No. 3:14-CV-958-D, 2015 WL 221085, at *9 (N.D. Tex. 2015) (Fitzwater, J.) (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004)).

In support of his racial profiling claim, Plaintiff alleges that Officer Miles is a "racist cop" who pulled him over because he saw "a Cadillac with chrome rims." Doc. 18 at 5. Plaintiff further asserts that (1) the "traffic stop was the product of 'selective enforcement of the law based on considerations such as race,'" Doc. 18 at 1; (2) the Grand Prairie Police Department is known to have a policy of "cultural racism . . . when it comes to African-Americans or Hispanics," Doc. 10 at 5; (3) anyone who is "[B]lack or Mexican [driving late at night in Grand Prairie should] expect to be picked up or even shot," Doc. 10 at 3; and (4) "he was singled out because of his license plates . . . the type of vehicle he drove, his style of dress, [and] his light skin Mexican/African American like complexion," Doc. 18 at 7.  What the *Amended Complaint* does not contain, however, is a plausible allegation that Plaintiff was treated differently than similarly-situated non-African-Americans and that the unequal treatment stemmed from a discriminatory intent.  *Pinedo*, 2015 WL 221085, at *9.

Simply put, a racial profiling claim cannot be based on one incident wherein a white police officer pulled over an African-American man because the man wore a certain type of clothing and drove a car with chrome wheels and an out-of-state license plate.  This conclusion is in stark contrast to other cases where the Court has found racial profiling claims sufficient.  For example, the Court declined to dismiss a racial profiling claim where the plaintiffs alleged that

(1) the African-American decedent was treated differently than similarly-situated non-African Americans; (2) more than 70 minorities had been killed in police shootings over the past 13 years while few, if any, white males suffered that fate; and (3) the police department's customs, policies, and practices permitted this use of deadly force based on stereotyping. *Flanagan v. City of Dallas*, No. 13-CV-4231-M-BK, 2015 WL 4731377, *3-4 (N.D. Tex. Aug. 10, 2015) (accepting magistrate judge's recommendation denying defendants' motion to dismiss the racial profiling claim). Accordingly, Plaintiff's racial profiling claim fails to state a claim upon which relief can be granted and should be dismissed.

### D. Racial Discrimination

Plaintiff also raises a claim under 42 U.S.C. § 1981, which prohibits discrimination based on race in the making and enforcement of contracts. To state a claim for a violation of Section 1981, a plaintiff must allege facts showing that (1) he is a member of a protected class; (2) the defendant intended to discriminate against him on the basis of race; and (3) the discrimination related to one or more activities enumerated in the statute, including the right to make or enforce contracts. *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002), abrogated on other grounds by *Burlington N. & Santa Fe. Ry. Co. v. White,* 548 U.S. 53 (2006).

Yet, the complaint and answers to the questionnaire are devoid of any factual enhancement reasonably suggesting any possible discriminatory conduct by Defendant Miles on account of Plaintiff's race in the making and enforcement of contracts. *See Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994) (affirming dismissal of section 1981 claims because plaintiff failed to allege that the defendants discriminated against him based on race). Apart from mentioning the words "discrimination based on race" and "racial discrimination" four times, the amended complaint is totally silent about facts supporting any discrimination in the

making and enforcement of a contract.  Doc. 18 at 2, 8.  Plaintiff has clearly offered nothing more than "labels and conclusions."  Twombly, 550 U.S. 544, 555 and 557 (requiring a litigant to "raise [his] right to relief above the speculative level" and to present more than a "naked assertion" devoid of "further factual enhancement."); Iqbal, 556 U.S. at 678 (noting that a litigant must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation").  Accordingly, Plaintiff has failed to state a claim under section 1981 that is plausible on its face.

### E. Harassment, Due Process, and Other Claims

Plaintiff generally contends that Defendants' "policies, practices, and/or actions" amounted to "harassment" and the "denial of procedural due process."  Doc. 18 at 1, 2, 8.  He mentions "harassment" three times and "due process" four times in his *Amended Complaint*.  *Id.*  However, his bare assertions offer nothing more than "labels and conclusions."  Twombly, 550 U.S. at 555.  Therefore, his harassment and due process claims fail as a matter of law.

Plaintiff also relies on the Federal Tort Claims Act (FTCA), the Texas Tort Claims Act, Title VII, and the Texas Code of Criminal Procedure Art. 2.131.  However, those claims likewise fail as a matter of law.  Doc. 18 at 2.  Any remedy under the FTCA lies exclusively against the United States, which is not a defendant in this case.  *See McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998) ("To sue successfully under the FTCA, a plaintiff must name the United States as the sole defendant.").  Moreover, the claims at issue in this case relate to a traffic stop, *not* the violation of a duty, on which tort liability depends under Texas law.  *See Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 736 (5th Cir. 2010) (the Texas "Tort Claims Act does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that would otherwise exist.").  Furthermore, Title VII, by its terms, applies only to a discriminatory

employment practice, which is clearly not a matter at issue in this case. *See* 42 U.S.C. § 2000e–2 (prohibiting discriminatory employment practices). In addition, the Texas Code of Criminal Procedure does not apply to civil rights litigation filed in federal court, and, thus, any claim based on Texas Code of Criminal Procedure Art. 2.131, which prohibits a peace officer from engaging in racial profiling, should also be dismissed. Doc. 18 at 2. *See Pinedo v. City of Dallas,* No. 3:14-CV-958-D, 2015 WL 221085 (N.D. Tex. 2015) (Fitzwater, J.).

    **F.  Chief of Police Dye**

Lastly, Chief of Police Dye may not be held liable under section 1983 for supervisory liability, even if Plaintiff had pled a sufficient constitutional violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (supervisory government employees are only liable for their own misconduct, and the doctrine of *respondeat superior* does not provide a basis for liability in a section 1983 action). Plaintiff has presented no factual enhancement reasonably suggesting that the alleged racial profiling, race discrimination, and harassment were due to Defendant Dye's own individual actions and/or any policy of the Grand Prairie Police Department. Doc. 18 at 2-3; Doc. 10 at 5-6.

### III. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend his complaint prior to *sua sponte* dismissal with prejudice. *See Brewster v. Dretke,* 587 F.3d 764, 767-768 (5th Cir. 2009) (*per curiam)* (while generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed," leave to amend is not required where plaintiff "has already pleaded his 'best case.'"). Here, based on the legal theory and facts Plaintiff posits in both the *Amended Complaint* and *Answers to the Questionnaire*, he cannot, as a matter of law, state a

colorable legal claim. Thus, the Court concludes that granting leave to amend would be futile and cause needless delay.

That notwithstanding, Petitioner will have adequate notice of the inadequacy of the complaint upon entry of this recommendation and the opportunity to respond or seek leave to amend during the 14-day objection period. *See Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016) (*sua sponte* dismissal with prejudice "is cabined by the requirements of basic fairness," and thus, unless dismissal is without prejudice or the plaintiff has alleged his best case, the district court must give "the plaintiff notice of the perceived inadequacy of the complaint and an opportunity for the plaintiff to respond"); *cf. Magouirk v. Phillips,* 144 F.3d 348, 359 (5th Cir. 1998) (magistrate judge's recommendation provided adequate notice and reasonable opportunity to oppose *sua sponte* invocation of defense).

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that any claim related to the validity of the traffic stop and Plaintiff's subsequent conviction for failing to obtain a Texas Driver's License be summarily **DISMISSED WITH PREJUDICE** as frivolous until such time as Plaintiff satisfies the conditions set forth in *Heck*, *see DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) ("A preferred order of dismissal in *Heck* cases decrees, 'Plaintiffs claims are dismissed with prejudice to their being asserted again until the Heck conditions are met.'") (citing *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)), and that all other claims be

**DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

*See* 28 U.S.C. § 1915(e)(2)(B).

    **SIGNED** October 27, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

    A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE